**Law Office of Leslie A. Bowman**
360 N. Court Ave.
Tucson, Arizona  85701
(520) 623-3336
Lbowman@dakotacom.net
By:  Leslie A. Bowman, Bar # 014738
Attorney for Defendant

### UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) No. CR-11-0561-TUC-DCB(DTF) |
| Plaintiff, | ) |
| | ) MOTION TO SUPPRESS EVIDENCE |
| vs. | ) |
| | ) (Hearing Requested) |
| OMAR RUIZ-PEREZ, | ) |
| | ) |
| Defendant. | ) |

It is expected that excludable delay under 18 U.S.C. § 3161(h)(1)(F) will occur as a result of this motion or of any order based thereon.

Defendant hereby moves this Court for its order to suppress the evidence seized as the result of an illegal search and seizure, in violation of Mr. Ruiz-Perez's rights pursuant to the Fourth Amendment to the United States Constitution and Wong Sun v. United States, 371 U.S. 471, 487 (1966).

Further support for this motion is contained in the following Memorandum of Points and Authorities.

MEMORANDUM OF POINTS AND AUTHORITIES

**Facts**–[1]

---

[1]The majority of the facts are taken from the government's disclosure. Defendant does not concede their accuracy. The

1

1  Omar Ruiz-Perez is a United States citizen, employed as a
2  commercial truck driver.  On 1/19/11 he picked up a truck from
3  his employer at The Produce Exchange warehouse in Rio Rico,
4  Arizona.  He was told that the truck was loaded with produce and
5  he was to deliver it to Advantage Produce, Inc. in Los Angeles,
6  California.  Mr. Ruiz-Perez had been working for a week or two
7  for the MRM Xpress trucking company.  At about 8:30 pm Mr. Ruiz-
8  Perez approached the U.S. Border Patrol checkpoint on Interstate
9  19 in Amado, Arizona at milepost 41, heading northbound.

10  Border Patrol Agent (BPA) Christopher Thornton was working
11  in one of the primary lanes.  When Mr. Ruiz-Perez approached,
12  Agent Thornton waved him through.  Mr. Ruiz-Perez drove a couple
13  of yards when Agent Thornton stopped him.  Agent Thornton was
14  directed by BPA Tim Kouris to conduct an immigration inspection
15  on the driver. ICE had provided information to Border Patrol that
16  MRM Xpress may be involved in smuggling illegal narcotics from
17  Mexico into the United States.  Mr. Ruiz-Perez declared his
18  United States citizenship.  There is no indication that his legal
19  presence in the country was questioned.

20  After the immigration inspection, Mr. Ruiz-Perez was asked
21  what he was hauling.  He was asked if he was the only person in
22  the truck.  He was asked to produce bills of lading for his
23  cargo.  Mr. Ruiz-Perez answered that he was hauling produce. He
24  stated that he was the only person in the vehicle.  He provided

---

facts will be more fully developed during the motion hearing.

two handwritten bills of lading.

Agent Thornton opined that the U.S. DOT number on the truck was "very high" and noted that there was evidence that the truck had been painted over after being owned by a different company. In his opinion, "these are indicators of smuggling involving semi-trucks and trailers", as are handwritten bills of lading.

It is anticipated that defense expert witness Cecil H. Lane, Jr. will testify, based on his 40 years of experience in the trucking industry, that there was nothing suspicious or improper about the placement of the U.S. DOT number on the truck. Neither is there anything suspicious about a truck being painted when it is purchased by a different company. He will also testify that he has seen hundreds of legitimate handwritten bills of lading.

Agent Thornton asked Mr. Ruiz-Perez for consent to search the trailer, which Mr. Ruiz-Perez granted, and the truck was referred to secondary inspection. While in secondary inspection, the truck and trailer were x-rayed. A false compartment with large bundles was detected in the front of the trailer by Agent St. Hilaire. Agent Kouris used his dog Gitta for a canine sniff. The dog alerted to narcotics in the trailer. The trailer doors were opened.

After unloading pallets of produce, it appeared that the front interior wall of the trailer was non-factory. The truck was also searched and revealed a duffle bag with a couple days of clothing and toiletries. Also found in the truck were a gallon jug of water, several other items of clothing and bedding in the driver's compartment. Agent Thornton described the belongings as

*3*

"few personal items", which might be an indicator of drug smuggling.

Agent Kouris determined that all of the above provided grounds to detain the truck and the driver. They were transported to the Border Patrol Station in Nogales, Arizona. After removing the front interior wall of the trailer, 134 bundles of marijuana weighing 1,404 kilograms were discovered. ICE Special Agent Matthew Curtis and Homeland Security Investigations (HSI) Deputy Special Agent in Charge from Tucson were called.

**Law** –

Unreasonable searches and seizures are prohibited by the Fourth Amendment to the United States Constitution. United States v. Fraire, 575 F.3d 929, 931 (9th Cir. 2009). The stop of a vehicle at a fixed Border Patrol checkpoint is considered a "seizure" for purposes of the Fourth Amendment. Id. Normally a search or seizure is unreasonable if it is not supported by individualized suspicion of criminal activity. Chandler v. Miller, 520 U.S. 305, 308 (1997).

The Supreme Court, however, upheld the constitutionality of an immigration checkpoint near the U.S.–Mexico border to intercept illegal immigrants in United States v. Martinez-Fuerte, 428 U.S. 543 (1979), based on the government's interest in securing the country's borders. City of Indianapolis v. Edmond, 531 U.S. 32, 38 (2000). That interest must be balanced against the liberty interest of the individual and "...individual interests outrank government convenience in the fourth amendment

balancing." United States v. Taylor, 934 F.2d 218, 220 (9th Cir. 1991).

The Supreme Court made clear that it has never approved a checkpoint whose primary purpose is simply to detect or investigate general crime. Indianapolis v. Edmond, 531 U.S. at 41. Two factors are essential to allowing a seizure at a fixed immigration checkpoint without reasonable suspicion. The primary purpose of the checkpoint must be for the detection of illegal immigrants and the duration of the detention must be no longer than necessary to fulfill the immigration-related purpose. United States v. Jaime, 473 F.3d 178, 183 (5th Cir. 2006).

Vehicles can be stopped at reasonably located checkpoints for brief questioning and referred to secondary inspection for additional brief questioning without "individualized suspicion" only in furtherance of the primary purpose of identifying illegal immigrants. United States v. Barnett, 935 F.2d 178, 180 (9th Cir. 1991); United States v. Jaime, 473 F.3d 178, 181 (5th Cir. 2006), citing Martinez-Fuerte, 428 U.S. 543. Referral of motorists to secondary inspection without "individualized suspicion" must be for immigration-related questioning. United States v. Martinez-Fuerte, 428 U.S. 543 (1979). If the referral to secondary is for a drug-related purpose, reasonable suspicion is required. United States v. Barnett, 935 F.2d at 181.

Argument –

Mr. Ruiz-Perez was "seized" for purposes of the Fourth Amendment once Agent Thornton stopped the truck at the immigration checkpoint. The initial brief detention to determine

Mr. Ruiz-Perez's immigration status was constitutional based on the holding in <u>Martinez-Fuerte</u>. However, there is no evidence that Agent Thornton doubted Mr. Ruiz-Perez's U.S. citizenship. The inquiry should have ended there. Questioning after the agent accepted Mr. Ruiz-Perez's legal status prolonged his detention beyond the time necessary to interview him for immigration purposes.

The stop at a fixed checkpoint is only per se reasonable if the scope of the detention is limited to a few brief questions, a request for production of documents to prove a legal right to be in the United States, and a visual inspection of the vehicle that does not include a search. <u>United States v. Taylor</u>, 934 F.2d 218, 220 (9th Cir. 1991). The Fourth Amendment only supports a checkpoint stop if there are appropriate limitations on the scope of the detention. <u>Id</u>.

In <u>Taylor</u>, the Ninth Circuit held that even where the initial stop at the checkpoint was proper, the government still needed to justify the additional 60 seconds detention for the canine sniff "...because of the intrusiveness inherent in extending the detention beyond the time required for immigration purposes." <u>Id</u>. "In striking a proper balance under the fourth amendment between the public and private interests, we hold that the brief further detention conducted by the government in this case must be predicated on an articulable suspicion or 'a minimal showing of suspicion,' United States v. Couch, 688 F.2d 599, 604 (9th Cir.), cert. denied, 459 U.S. 857, 103 S.Ct. 128, 74 L.Ed.2d 110 (1982), of criminal activity."

*6*

When Agent Kouris directed Agent Thornton to conduct an immigration inspection on the driver, it appears the decision was based on ICE HSI information that MRM Xpress may be involved in smuggling illegal narcotics from Mexico into the United States.[2] That information in conjunction with Agent Thornton's opinions about the U.S.DOT number, the paint and the bills of lading did not rise to the level of reasonable suspicion required to prolong the duration of the detention.

Reasonable suspicion, pursuant to the Fourth Amendment, has been defined by the Ninth Circuit as requiring "specific articulable facts", which when combined with "objective and reasonable" inferences form a foundation for suspecting that a specific person is engaged in criminal behavior. United States v. Thomas, 211 F.3d 1186, 1189 (9th Cir. 2000).

The facts relied on may be interpreted based on a trained officer's experience, but they must be "more than the mere subjective impressions of the particular officer." Id. They must be based on objective facts that have a rational explanation. Id. There is no reasonable suspicion that a particular person is engaged in criminal conduct where the factors relied upon describe too many people and create too general a profile. Id. at 1418-19. Reasonable suspicion must be based on more than just a hunch. United States v. Jones, 234 F.3d 234, 241 (5th Cir. 2000) citing United States v. Sokolow,

---

[2] Defendant does not have the specific information known to the agents. That has been requested from the government but not yet received.

7

490 U.S. 1 (1989).

In the present case, positioning of the U.S.DOT number is not regulated, except that it must be visible from 50 feet away. U.S.DOT Rules and Regulations, § 390.21(c), which it was.  There is nothing suspicious about a truck that has been painted over when purchased by a new company.  Handwritten bills of lading are not uncommon in the commercial truck industry.

The permissible purpose of the stop was accomplished when the agent was satisfied that Mr. Ruiz-Perez is a U.S. citizen. In United States v. Barnett, 935 F.2d at 181, the Ninth Circuit did not address the issue of a stop that is completely or partially a pretext for searching for drugs, because the defendants did not present any evidence that the agents were looking for drugs.  In the present case, however, there is substantial evidence that the prolonged detention and request for consent to search the trailer was a pretext to search for drugs.

The permissible duration of a checkpoint stop is only long enough for the occupants of the vehicle to respond to the immigration questions and produce their documents. United States v. Ortiz, 422 U.S. 891 (1975).  An officer may ask questions outside of the scope of the immigration inquiry but only so long as they do not prolong the duration of the stop.  Id.

Since the seizure of Mr. Ruiz-Perez was illegal, his consent to search was invalid and the items found in the search that followed must be suppressed as the "fruits of the poisonous tree".  Wong Sun v. United States, 371 U.S. 471, 487 (1966). There was no "significant intervening time, space or event"

between the unlawful seizure and the search of the truck.  There was no break in the chain of events sufficient to refute the inference that the search was the product of the illegal seizure. The search was tainted and the evidence obtained should be suppressed. <u>United States v. Bautista</u>, 362 F.3d 584, 591 (2004).

WHEREFORE defendant prays that this Court hold an evidentiary hearing and thereafter preclude the government from introducing as evidence the items illegally seized from the truck and trailer.

Respectfully submitted June 9, 2011.

                                              /S Leslie A. Bowman
                                              Leslie A. Bowman
                                              Attorney for Defendant

Copy delivered by
ECF this date to:

Gordon E. Davenport, III
AUSA